# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Eddie Arnold, *et al.*,

     Plaintiffs,

-v-                                 Case No. 2:08–cv–262

The City of Columbus,             Judge Michael H. Watson

     Defendant.

## OPINION AND ORDER

This is an employment discrimination action brought by seven officers with the Columbus Division of Fire, and arising in large part out of a series of investigations that were conducted into allegations of wrongdoing within the Columbus Division of Fire's Fire Prevention Bureau. Plaintiffs assert that they were discriminated against on the basis of race and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Ohio Revised Code Chapter 4112. Plaintiffs also assert that they were retaliated against for engaging in speech protected by the First Amendment, and that Defendant violated their right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Lastly, Plaintiffs complain that Defendant portrayed them in a false light in violation of Ohio law. Defendant moves for summary judgment on all of Plaintiffs' claims. Def.'s Mot. Summ. J., ECF No. 35. For the reasons that follow, the Court grants Defendant's summary judgment motion.

## I. FACTUAL BACKGROUND

The instant case is one of four related actions currently before this Court, all brought by members of the Columbus Division of Fire's Fire Prevention Bureau.  The plaintiffs in these related cases assert similar claims of race (or race association) discrimination and hostile work environment in violation of Title VII and Ohio Revised Code § 4112.02, claims of constitutional violations pursuant to 42 U.S.C. § 1983, and a state law claim for invasion of privacy/false light.  The lead case of the four, brought by a Battalion Chief formerly with the Fire Prevention Bureau, is Case No. 2:08–cv–31, *Yolanda Arnold v. City of Columbus*.  The Court will refer to that case as the "lead case."  Familiarity with the lead case is presumed.  The Court adopts and incorporates by reference the related Opinion and Order in the lead case into this Opinion.

The seven Plaintiffs in the instant action are Eddie Arnold, Dayle Boyce ("Boyce"), Terry Cornett ("Cornett"), Melvin Hoston ("Hoston"), Tyrone Redmond ("Redmond"), George Rickman ("Rickman") and Robert Taylor ("Taylor") (collectively, "Plaintiffs").  Plaintiffs are all African-American firefighters who worked in the Columbus Division of Fire's Fire Prevention Bureau ("FPB"), specifically in the FPB's Inspection section.  *See* First Am. Compl. ¶¶ 1–2, ECF No. 6.  Plaintiffs bring this action against the City of Columbus ("the City" or "Defendant"), which operates the Columbus Division of Fire ("CDF").

As in the lead case, Plaintiffs' claims in this action arise primarily from three investigations the CDF initiated in 2004 and 2005 into allegations of wrongdoing by FPB inspectors; that is, their claims arise primarily from the PSU investigation, CDP investigation, and Krivda investigation.  The circumstances of those investigations are

described in the Factual Background section of the Opinion and Order in the lead case. The following facts are provided as a supplement to that background.

Prior to the start of the Krivda investigation, the City made an agreement with the International Association of Fire Fighters, Local 67 ( the "Union") for a Union representative to be present at the interviews Krivda conducted. Davis Aff. ¶ 3, ECF No. 35–2; *see also* Pettus Aff. ¶ 8, Brown Aff. ¶ 7, ECF No. 35–2. James Davis ("Davis") was the Union representative who sat in on Krivda's interviews. Davis Aff. ¶ 4, ECF No. 35–2. Davis states that he did not sit in on every interview, but did attend every interview of which he was aware. *Id*. Plaintiffs characterize the agreement between the City and the Union as "impermissible," and state that they did not want a representative from the Union to be present at their interviews. *See* Pls.' Corrected Mem. Opp'n to Def.'s Mot. Summ. J. ("Pls.' Mem. Opp'n" or "memorandum in opposition") Page ID #4976, ECF No. 118.

The plaintiffs in the related cases also complain that Krivda tape-recorded only some of her interviews. On February 23, 2006, Union President Jack Reall sent a letter to Safety Director Mitchell Brown requesting that all interviews in connection with Krivda's investigation be tape-recorded. Davis Aff. ¶ 11, ECF No. 35–2. Prior to that date, Krivda had not tape-recorded all the interviews she conducted. Davis attests that all of Krivda's interviews he attended after February 23, 2006 were tape-recorded. *Id*. Plaintiffs' interviews all took place in March 2006, after Krivda began taping the interviews. *Id*. at ¶¶ 6–10, ECF No. 35–2. Plaintiffs contend that only those interviews with the African-American inspectors, and not with Caucasian officers, were taped. *See* Pls.' Mem. Opp'n Page ID # 4987.

Plaintiffs filed their initial complaint on March 19, 2008, and their First Amended Complaint on April 23, 2008.  ECF Nos. 2, 6.  In their First Amended Complaint, Plaintiffs assert claims of race discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02.  First Am. Compl. ¶¶ 49–56, ECF No. 6.  Additionally, Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for retaliation for engaging in conduct protected by the First Amendment, and for violations of the Fourteenth Amendment's equal protection guarantee.  *Id.* at ¶¶ 59–62, ECF No. 6.  Lastly, Plaintiffs assert a state law claim for invasion of privacy/false light.  *Id.* at ¶¶ 57–58, ECF No. 6.

This Court has jurisdiction over Plaintiffs' Title VII and § 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## II.  SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim.  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  Under Rule 56©, the party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record," or "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In responding to a summary judgment motion, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see also Steward v. New Chrysler*, No. 08-1282, 2011 WL 338457, at *7 (6th Cir. Feb. 4, 2011) ("At this stage in the litigation, a plaintiff may no longer rely solely on her pleadings, but must come forward with 'probative evidence tending to support the complaint.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita*, 475 U.S. at 588 (1986); *Petty v. Metro. Gov't. of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P.

56(c)(3).  It is not the obligation of the court to comb the record to find evidence or

testimony establishing a party's case.  *See Nerswick v. CSX Transp., Inc.*, 692 F. Supp.

2d 866, 882 (S.D. Ohio 2010) (citing *Street*, 886 F.2d at 1479–80); *see also Tucker v.*

*Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all

reasonable inferences in favor of the nonmoving party, and must refrain from making

credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*,

469 F.3d. 479, 487 (6th Cir. 2006).  The Court disregards all evidence favorable to the

moving party that the jury would not be required to believe.  *Reeves*, 530 U.S. at

150–51.  Summary judgment will not lie if the dispute about a material fact is genuine,

"that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson*, 477 U.S. at 248; *Barrett v. Whirlpool Corp.*, 556 F.3d

502, 511 (6th Cir. 2009).  Thus, the central issue is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  *Hamad v. Woodcrest Condo. Ass'n*, 328

F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III. DISCUSSION

As a preliminary matter, the Court notes that, like plaintiff Yolanda Arnold in the

lead case, Plaintiffs do not appear to appreciate the extent of their burden in

responding to Defendant's motion for summary judgment, and spend considerable

effort arguing that Defendant did not carry its initial burden to disprove their case.

Plaintiffs seemingly filed to the docket nearly every piece of discovery obtained in these

four related cases, including nearly three dozen depositions and nearly two hundred exhibits. Plaintiffs, however, failed to cull this discovery and provide few cites to specific pieces of evidence in support of their allegations and claims.[1] The Court reiterates that it has no duty "to comb the record to find evidence or testimony establishing a party's case." *Nerswick*, 692 F. Supp. 2d at 882. Rather, Plaintiffs, as the non-moving parties, have an affirmative duty to direct the Court's attention to those specific portions of the record upon which they seek to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## A. Race Discrimination

Plaintiffs assert they were the victims of employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code § 4112.02. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Similarly, Ohio Revised Code

---

[1] The Court notes that in their memorandum in opposition, Plaintiffs argue that "[d]iscovery in all four [related] cases has been an odyssey," that "[t]here is a veritable grocery list of documents requested by Plaintiffs but not produced by Defendant," and that Defendant "actually removed or destroyed records that were pertinent to all Plaintiffs['] claims in these [related] cases." Pls.' Mem. Opp'n Page ID #4966. Plaintiffs argue that they are "entitled to an adverse inference relating to the documents not produced or destroyed." *Id*. The record does not reflect, however, that Plaintiffs filed any motions to compel the production of documents during discovery. Additionally, even assuming that spoliation occurred, Plaintiffs do not argue that a sanction or remedy for the spoliation is appropriate. *See, e.g. Strong v. U-Haul Co. of Mass.*, No. 1:03-cv-00383, 2006 WL 5164822, at *3 (S.D. Ohio Dec. 28, 2006) (discussing factors courts consider in determining whether to sanction the spoliating party). Additionally, Plaintiffs do not submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d), showing that they cannot present facts essential to justify their opposition to summary judgment and requesting additional time for discovery or another appropriate order. To the contrary, Plaintiffs explicitly represent in their memorandum in opposition that "[d]espite these [discovery] obstacles," "Plaintiffs have marshaled abundant evidence to support their claims under the laws of the United States and Ohio." Pls.' Mem. Opp'n Page ID #4966. Thus, to the extent Plaintiffs may have attempted to imply in complaining about the discovery process that they cannot present facts essential to justify their opposition to summary judgment, they have expressly waived such a claim.

§ 4112 prohibits employers from discriminating against any person with respect to the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of that person's race.  Ohio Rev. Code § 4112.02(A).  A claim for race discrimination under Ohio Revised Code § 4112.02(A) is evaluated using the same analytical framework as a Title VII claim.  *See Allen v. Ohio Dep't of Job and Family Servs.*, 697 F. Supp. 2d 854, 880 (S.D. Ohio 2010).

A plaintiff may prove that he was subject to disparate treatment based on race in violation of Title VII using either direct or circumstantial evidence.  *See, e.g., Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).  As in the lead case, Plaintiffs here specifically argue in their memorandum in opposition that they have established a prima facie case of racial discrimination using circumstantial evidence.  They do not state that they seek to prove their claim using direct evidence.  They do, however, attempt to offer direct evidence at two points in their memorandum in opposition.  The Court will thus analyze Plaintiffs' claim under both the direct and indirect method of proof.

### 1.  Direct evidence

In discrimination cases, direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  "[D]irect evidence of discrimination does not require a factfinder to draw any inferences" as to discriminatory motive.  *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

Although Plaintiffs do not plainly articulate these arguments, they seem to offer a statement by Virgil Moore as an attempt to establish direct evidence of race

discrimination with regard to the PSU and CDP investigations. They also seem to offer statements by Judy Evergin, Wesley Fullen and Hoston as an attempt to establish that Safety Director Mitchell Brown ("Brown") admitted to having a racial bias.

### a. The PSU and CDP investigations

Plaintiffs first attempt to introduce direct evidence that Paxton instigated the PSU and CDP investigations out of racial animus. Specifically, they offer the deposition testimony of Virgil Moore ("Moore"), a firefighter in the FPB Inspection section and a plaintiff in the related case *Maxwell, et al. v. City of Columbus*, Case No. 2:08–cv–264. In his deposition, Moore stated that Stacy Miller ("Miller"), a local business owner, told Moore that in the course of a conversation between Paxton, Miller, and the bar owner at a local bar, Paxton stated, referring to Yolanda Arnold, "we need to get the n[****]r out of there." Pls.' Mem. Opp'n Page ID #4983; Moore Dep. 82–85, ECF No. 116. Paxton attests that he did not make the alleged statement. Paxton Aff. ¶ 4, attached to Def.'s Reply, ECF No. 123–1. This alleged statement by Paxton, offered through Moore's deposition testimony, is the same statement that plaintiff Yolanda Arnold attempted to introduce in the lead case. Plaintiffs offer no new argument regarding this statement; they do not argue, for instance, that either Miller's or Moore's statements are not hearsay or fall under a hearsay exception pursuant to Federal Rules of Evidence 801 or 803. Therefore, for the reasons discussed in the lead case, Moore's testimony regarding Miller's statement to Moore about what Paxton said in a conversation with Miller is double hearsay, and may not be considered by the Court on summary judgment. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth

of the matter asserted."); *Jacklyn*, 176 F.3d at 926 ("Hearsay evidence may not be considered on summary judgment."); *United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005) ("in order for double-hearsay statements to be admissible, both statements must be excluded from the hearsay definition").

### b. Safety Director Mitchell Brown's alleged admission of bias

Next, Plaintiffs attempt to offer direct evidence that Brown expressed racial bias. In the context of Plaintiffs' claims, it seems to the Court that Plaintiffs attempt to introduce direct evidence of Brown's racial bias to argue that he ordered the Krivda investigation out of racial bias. *See* Pls.' Mem. Opp'n Page ID #4991. Specifically, Plaintiffs allege that Brown stated that he was "'harder on blacks than he was on whites' so he would not be accused of showing bias." *Id.* at #4991. In support of that allegation, however, Plaintiffs offer only inadmissible hearsay. First, they offer a statement from the affidavit of Judy Evergin ("Evergin"), a lieutenant with the CDF. In particular, Plaintiffs point to Evergin's statement that Charleta Tavares ("Tavares"), a Columbus City Councilwoman, told Evergin that Brown had stated to Tavares that he was "harder on blacks because he did not want it shown that he was showing any bias towards blacks." Evergin Aff. ¶¶ 27–29, ECF No. 108. Plaintiffs also offer the testimony of Wesley Fullen ("Fullen"), an officer in the CDF and the plaintiff in the related case *Fullen v. City of Columbus*, No. 2:08–cv–263, as evidence of that statement. In his deposition, Fullen also testified that Tavares told Fullen that Brown "has stated that he tends to treat blacks more harshly so that he can appear to be

unbiased." Fullen Dep. 53–54, ECF No 77.[2] Lastly, Plaintiffs offer a statement from the declaration of Plaintiff Hoston as evidence of this same alleged statement by Brown. Pls.' Mem. Opp'n Page ID #4977. In his declaration, Hoston simply attests that: "Safety Director Mitchell Brown made the statement that he is harder on blacks than whites, just to seem fair." Hoston Decl. ¶ 12, ECF No. 102. Brown attested that he did not make the alleged statement. Brown Aff. ¶¶ 2–3, attached to Def.'s Reply, ECF No. 123–2.

In the lead case, plaintiff Yolanda Arnold also attempted to introduce the alleged statement by Brown, through Evergin's declaration, as evidence of his racial bias. Again, Plaintiffs offer no new argument with regard to the alleged statement by Brown, besides what Yolanda Arnold presented in the lead case. They do not, for instance, argue that Brown's alleged statement, or the statements by Tavares or Hoston are not hearsay or fall under a hearsay exception. Therefore, for the reasons discussed in the lead case, Evergin's and Fullen's statements regarding Tavares' statement to them about what Brown allegedly said in a conversation with Tavares are double hearsay and may not be considered by the Court on summary judgment. *See* Fed. R. Evid. 801(c); *Jacklyn*, 176 F.3d at 926; *Gibson*, 409 F.3d at 337. Likewise, Hoston's statement is also inadmissible hearsay, as it is a statement made by someone other than the declarant, offered to prove the truth of the matter asserted, that Brown treated African-Americans differently.

Plaintiffs thus do not provide admissible direct evidence of racial discrimination.

---

[2] It is not clear from Fullen's testimony whether he intended to say that Tavares told Fullen that *she heard* Brown make the alleged statement, or whether Tavares told Fullen that, from her perspective or from what she had been told by someone else, Brown "tends to treat blacks more harshly." See Fullen Dep. 53–60, ECF No. 77. If Fullen intended the latter, not only would Tavares' statement be hearsay, but it also could not be considered purported direct evidence of Brown's alleged racial bias.

The Court therefore proceeds to evaluate Plaintiffs' claims under the indirect method.

### 2. Indirect evidence

Plaintiffs' circumstantial evidence of race discrimination is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) and *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256–59 (1981). *See, e.g., Upshaw*, 576 F.3d at 584. Under this framework, a plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). Although "[t]here are many 'context dependent ways by which plaintiffs may establish a prima facie case,'" "the key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). To establish a prima facie case, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a similarly-situated person outside the protected class was treated more favorably than he was. *See Braithwaite*, 258 F.3d at 493. If the plaintiff demonstrates a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. *Id*. Once the defendant articulates a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to establish that the defendant's proffered reason was a pretext for discrimination. *Id*. "To show pretext, a plaintiff must be able to demonstrate

both that the 'reason was false, and that discrimination was the real reason.'" *Pittman v. Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 917 (N.D. Ohio 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr.*, 509 U.S. at 518 (quoting *Burdine*, 450 U.S. at 253).

An adverse employment action in the context of a Title VII discrimination claim is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Mich. Dept. of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)). A materially adverse change includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)). Notably, "a change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Here, Defendant argues that Plaintiffs' Title VII race discrimination claim must fail because they cannot establish that they suffered an adverse employment action or that they were treated differently than similarly-situated co-workers outside their protected class. Defendant also argues that Plaintiffs cannot show that the legitimate,

non-discriminatory reasons it offers for its actions were pretextual.

Defendant first argues that Plaintiffs cannot establish a prima facie case of race discrimination based on the PSU, CDP, and Krivda investigations. Defendant argues that the investigations themselves were not adverse actions, and further argues that neither the fact that Union representative James Davis was present during Krivda's interviews, nor that Krivda's interviews with Plaintiffs were tape-recorded, constitutes an adverse action. Defendant also argues that Plaintiffs were not treated differently than similarly-situated co-workers outside their protected class with respect to the investigations, and that, even if Plaintiffs could establish a prima facie case, the investigations were conducted for a legitimate, non-discriminatory reason. Additionally, Defendant argues that Plaintiffs' claims of race discrimination based on the PSU and CDP investigations are time-barred because Plaintiffs did not file their EEOC charges regarding those investigations within 300 days after they concluded. Defendant also argues that with the exception of Plaintiffs Cornett and Rickman, Plaintiffs' claims of race discrimination based on the presence of Davis at their interviews and the fact that the interviews were tape-recorded are also time-barred. Def.'s Mot. Summ. J. Page ID #154–56, ECF No. 35; Def.'s Mot. Modify Mot. Summ. J., ECF No. 47 (acknowledging Plaintiffs Cornett and Rickman filed their EEOC charges within 300 days of their interview with Krivda).

Second, Defendant argues that Plaintiffs cannot establish a prima facie case of race discrimination based on the fact that they were required to complete daily activity sheets or the fact that Paxton at one point prohibited them from parking their vehicles remotely. Defendant argues that neither of these actions is materially adverse, and

Plaintiffs cannot establish that they were treated less favorably than similarly-situated co-workers.  Additionally, Defendant argues that it had a legitimate, non-discriminatory business reason for instituting the requirement to complete activity sheets and prohibiting remote parking.  Lastly, Defendant argues that Plaintiffs' Title VII claim based on these two events is also time-barred because Plaintiffs did not file their EEOC charges within 300 days of the requirement to maintain activity sheets or the directive to cease remote parking.

Third, Defendant argues that Plaintiff cannot establish a prima facie case of race discrimination based upon an alleged order by Ellis prohibiting those Plaintiffs who had filed EEOC charges from congregating with one another during work hours.  Defendant argues that this directive was not an adverse employment action, and Plaintiffs were not treated differently than similarly-situated individuals.

In response, Plaintiffs argue that they can establish a prima facie case of race discrimination.  First, Plaintiffs argue that, as they state in a heading within their memorandum in opposition, they "clearly suffered adverse actions under the Title VII standard."  Pls.' Mem. Opp'n Page ID #4980.  Plaintiffs' argument in this regard, however, is somewhat vague.  In that section Plaintiffs argue as follows:

> All of the Plaintiff inspectors can show adverse actions, from write-ups to unwarranted investigations to denial of transfers.  First there were investigations based on clear falsehoods and bare allegations, picked up by the press.  Plaintiffs were consistently portrayed and falsely accused quite publicly of criminal behavior . . . .  All of the Plaintiffs were singled out for public and false allegations of "criminal" wrongdoing.  The harassment was so severe that it, too, altered the terms and conditions of their employment: subjected to repeated investigations, disciplinary write-ups, subjected to intense scrutiny, loss of reputation and dignity.  The increased (unwarranted) scrutiny alone was itself adverse.

Pls.' Mem. Opp'n Page ID #4980–81 (internal citations omitted).  In sum, then, Plaintiffs

identify, in a cursory manner, "disciplinary write-ups" and "denial of transfers" as the adverse actions they allegedly suffered. Additionally, although Plaintiffs do not state directly, the Court interprets the above language as an attempt to allege that the PSU, CDP and Krivda investigations constituted adverse actions. Lastly, although Plaintiffs do not make this argument directly, by citing to *Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006) for the proposition that "loss of acting time and overtime opportunities for firefighter constituted adverse action," and by stating in a footnote that Wesley Fullen allegedly "lost between $12,000 and $18,000 in overtime for lost work opportunities," it appears to the Court that Plaintiffs also attempt to state they suffered an adverse employment action in being denied overtime payments. Pls.' Mem. Opp'n Page ID #4981 and n.15.

In addition to arguing that they did suffer actions which qualify as adverse, Plaintiffs also argue that Defendant's stated reasons for its actions were pretextual. Notably, Plaintiffs do not argue specifically that they were treated differently than similarly-situated officers outside of their race.

The Court will first address Defendant's argument that some of Plaintiffs' Title VII race discrimination claims are time barred, and will then address the substance of Plaintiffs' race discrimination claims.

### a. Time barred claims

#### I. PSU and CDP investigations

As a preliminary matter, the Court agrees with Defendant that to the extent Plaintiffs argue that the PSU and CDP investigations in themselves are adverse actions, Plaintiffs' Title VII race discrimination claim based on those investigations is

time-barred.  In order to bring a Title VII lawsuit, a plaintiff must first file a timely

discrimination charge with the Equal Employment Opportunity Commission ("EEOC").

See Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001).  In Ohio, a "deferral

state," a plaintiff must file an EEOC Charge within 300 days of the alleged

discriminatory act.  See id. at 498 (quoting Alexander v. Local 496, Laborers' Int'l Union

of N. Am., 177 F.3d 394, 407 (6th Cir. 1999)).

Defendant argues that Plaintiffs failed to exhaust their administrative remedies

with respect to the PSU and CDP investigations because Plaintiffs did not file their

EEOC charges regarding those investigations within 300 days of when the

investigations concluded.  Defendant presents evidence, and Plaintiffs concede, that

the PSU investigation was completed in February 2005, with its findings issued in May

2005.  Pettus Aff. ¶ 4 and exhibit thereto, ECF No. 35–2; Brown Aff. ¶ 4, ECF No. 35–2;

Pls.' Mem. Opp'n Page ID #4974.  Plaintiffs present evidence that the CDP

investigation was completed in March 2005.  Informal Investigative Report dated March

8, 2005, ECF No. 88–27.

Defendant also presents evidence that Plaintiffs filed EEOC charges alleging

race discrimination and racially hostile work environment based on, inter alia, being

subjected to investigations by the City, "none of which found any irregularities in our

work or performance," and the harm to their reputations caused by media coverage of

the investigation.  See Gordon Aff. ¶¶ 1–8 and exhibits thereto, ECF No. 35–1.

Plaintiffs filed their EEOC charges on the following dates:

- Eddie Arnold, EEOC Charge No. 532-2007-00587, filed January 17, 2007.
- Terry Cornett, EEOC Charge No. 532-2007-00586, filed January 17, 2007.

- Melvin Hoston, EEOC Charge No. 532-2007-00622, filed January 22, 2007.
- George Rickman, EEOC Charge No. 532-2007-00618, filed January 22, 2007.
- Robert Taylor, EEOC Charge No. 532-2007-00624, filed January 22, 2007.
- Dayle Boyce, EEOC Charge No. 532-2007-00600, filed January 25, 2007.
- Tyrone Redmond, EEOC Charge No. 532-2007-00609, filed January 25, 2007.

*Id.* at ¶ 5–7 and exhibits thereto, ECF No. 35–1.

Plaintiffs do not in any way address or respond to Defendant's argument that their Title VII race discrimination claims based on the CDP and PSU investigations are time-barred. As did plaintiff Yolanda Arnold in the lead case, Plaintiffs simply argue that because Ohio Revised Code § 4112.02 does not require an EEOC or OCRC charge to perfect a claim and because a six-year statute of limitations applies to claims brought under that Section, their discrimination and retaliation claims are timely under Ohio law. Pls.' Mem. Opp'n Page ID #4991–92. Therefore, Plaintiffs have waived the argument that their Title VII race discrimination claims based on the PSU and CDP investigations are properly before the Court.

The Court, however, will consider the PSU and CDP investigations in evaluating Plaintiffs' hostile work environment claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability."). Additionally, Plaintiffs are correct that their discrimination and retaliation claims based on the PSU and CDP investigations are timely under Ohio law for purposes of their claims under Ohio Rev. Code § 4112.02. *See Harrison v. City of Akron*, 43 F. App'x 903, 905 (6th Cir. 2002) (a plaintiff need not exhaust administrative remedies prior to

filing suit for race discrimination under Ohio Revised Code § 4112.02); *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St. 3d 281, 282 (1994) (the statute of limitations for bringing a claim under § 4112.02 is six years). For the purposes of their § 4112.02 claim, the Court will discuss Plaintiffs' substantive claim that the PSU and CDP investigations constituted an adverse action in Section III(A)(2)(b), below.

### ii. Union presence and the tape-recording in Krivda's interviews

In their EEOC charges, Plaintiffs also specifically complained of the presence of a Union representative at their interviews with Krivda, and the fact that those interviews were tape-recorded. *See* Gordon Aff. ¶¶ 1–8 and exhibits thereto, ECF No. 35–1. Defendant presents evidence that the EEOC charges of the Plaintiffs, Eddie Arnold, Boyce, Hoston, Redmond and Taylor, were filed more than 300 days after their interviews with Krivda, which were tape-recorded and which Union representative Davis attended.[3] Specifically, Defendant presents evidence that Eddie Arnold was interviewed on March 13, 2006, Hoston and Taylor were interviewed on March 27, 2006, Boyce was interviewed on March 28, 2006, and Redmond was interviewed on March 29, 2006. Davis Aff. ¶¶ 6–10, ECF No. 35–2. The dates of those Plaintiffs' EEOC charges fall just outside the 300-day limitations period.

Again, Plaintiffs do not in any way address or respond to Defendant's argument that their Title VII race discrimination claims based on the Union presence at or tape-recording of their interviews are time-barred. Therefore, Plaintiffs Eddie Arnold, Boyce,

---

[3]Defendant concedes that Plaintiffs Cornett and Rickman's EEOC Charges with regard to the presence of the Union representative in and the tape-recording of their interviews were timely. Mot. Summ. J. Page ID #154 n.2; Mot. Modify Mot. Summ. J., ECF No. 47.

Hoston, Redmond and Taylor have also waived the argument that their Title VII race

discrimination claims based on these aspects of the interviews are properly before the

Court.  The Court will, however, consider Plaintiffs' allegations regarding the Union

presence in and the tape-recording of their interviews in evaluating their hostile work

environment claims.  *See Nat'l R.R. Passenger Corp*, 536 U.S. at 117.  Additionally,

Plaintiffs' race discrimination claims based on those specific aspects of the interviews

are timely under Ohio law, for the purposes of their claim under Ohio Revised Code §

4112.02.  *See Harrison*, 43 F. App'x at 905; *Cosgrove*, 70 Ohio St. 3d at 282.[4]

### iii. Directive to cease remote parking

Defendant also asserts that Plaintiffs' Title VII claims of race discrimination are

time barred with respect to the directive to cease remote parking, because Plaintiffs did

not file their EEOC charges within 300 days of that directive.  Defendant presents

evidence that the prohibition against remote parking was made by Paxton, sometime

between 2003 and May 2005, when Paxton left the FPB.  Taylor Dep. 90–93.  Plaintiffs

do not dispute or respond to this argument.  Therefore, Plaintiffs also have waived the

argument that their Title VII race discrimination claims based on the prohibition against

remote parking is properly before the Court.[5]  As with the other time barred claims,

however, the Court considers that alleged action as part of Plaintiffs' hostile work

---

[4]As the Court will discuss in Section III(A)(2)(c)(ii) below, however, Plaintiffs fail to establish a claim of race discrimination based on these allegations.

[5]Defendant also asserts that Plaintiffs' Title VII claims of race discrimination are time barred with respect to the requirement to maintain activity sheets.  In support, Defendant cites to the deposition testimony of Plaintiff Taylor to establish that the activity sheets were already in place in August 2002.  In the cited testimony, however, Taylor states that he does not know when the tracking sheets were instituted.  Taylor Dep. 97–98, ECF No. 83.  Thus, Defendant has not established that Plaintiffs' Title VII race discrimination claims are time-barred with regard to that requirement.

environment claim. *See Nat'l R.R. Passenger Corp*, 536 U.S. at 117. Additionally, Plaintiffs' race discrimination claim based on the prohibition on remote parking is timely under Ohio law, for the purposes of their claim under Ohio Revised Code § 4112.02. *See Harrison*, 43 F. App'x at 905; *Cosgrove*, 70 Ohio St. 3d at 282.

The Court now turns to the substance of Plaintiffs' race discrimination claim; that is, whether the parties have carried their respective burdens under the *McDonnell Douglas* framework.

### b. The PSU, CDP, and Krivda investigations

To reiterate, Plaintiffs argue that they were subject to adverse actions based on "investigations based on clear falsehoods and bare allegations, picked up by the press;" being "consistently portrayed and falsely accused quite publicly of criminal behavior;" being "singled out for public and false allegations of 'criminal' wrongdoing;" being subjected to "intense scrutiny," suffering a "loss of reputation and dignity," and because the "increased (unwarranted) scrutiny alone was itself adverse." Pls.' Mem. Opp'n Page ID #4980–81. Those allegations are nearly identical to those made by plaintiff Yolanda Arnold in the lead case. Thus, as it did in the lead case, the Court will surmise here that with the above cited language, Plaintiffs attempt to argue that the PSU, CDP, and Krivda investigations constituted adverse employment actions.

In support of that claim, Plaintiffs present no additional argument or authority beyond what was raised in the lead case. Specifically, Plaintiffs present no authority that the degree of scrutiny of the PSU, CDP and Krivda investigations rose to the level of an adverse action. Plaintiffs do not present evidence that the negative media coverage or the content of the articles in *The Columbus Dispatch* effected a "materially

adverse change in the terms or conditions of [their] employment." *Michael*, 496 F.3d at 593. Additionally, Plaintiffs do not offer legal authority indicating that Defendant may be held responsible for any processes or procedures of the investigation conducted by Krivda, an independent third party. Further, Plaintiffs present no evidence of the theory, also advanced by plaintiff Yolanda Arnold in the lead case, that someone in the CDF was leaking false information about them to the *Dispatch*, and encouraging the allegedly harassing stories. Nor do Plaintiffs present authority to establish that articles in the *Dispatch*, written by a member of the *Dispatch* staff, may form the basis of a Title VII race discrimination claim. Plaintiffs, lastly, present no evidence to indicate that the investigations were a pretext for race discrimination. Therefore, since the argument Plaintiffs present is in all essential respects the same as that presented by Yolanda Arnold in the lead case, for the reasons elaborated in the lead case, Defendant is entitled to summary judgment on Plaintiffs' race discrimination claim based on an allegation that the PSU, CDP and Krivda investigations constituted adverse actions.

### c. Miscellaneous allegations

### I. Disciplinary write-ups and denial of transfers

In the section of their memorandum in opposition arguing that they suffered adverse employment actions, Plaintiffs cursorily mention "disciplinary write-ups" and "denial of transfers" as examples of those adverse actions. Pls.' Mem. Opp'n Page ID #4980–81. The Court notes that Plaintiffs also make similar cursory references to those actions in the "Statement of Facts" section of their memorandum in opposition. In that section, Plaintiffs briefly mention, with minimal supporting evidence, that the FPB inspectors were subjected to a hostile work environment due, in part, to Lt. Daum's

alleged threats "to [write them up] for 'missed inspections' that were never missed," and to the alleged "denial of transfers." *Id.* at Page ID #4976–77. In that section, Plaintiffs also claim that they were disciplined "for backtiming—even though it was known to be past practice," and claim that they were "being written up for conduct that white firefighters are not." *Id.*

Plaintiffs, however, provide no elaboration on how the alleged "disciplinary write-ups" or "denial of transfers" constituted adverse employment actions. To support the allegation that they were denied transfers, Plaintiffs cite only to the deposition testimony of Eddie Arnold and Robert Maxwell. That testimony, however, fails to establish that the alleged "denial of transfers" were adverse employment actions, that is, that they effected a "materially adverse change in the terms or conditions of [their] employment." *Michael*, 496 F.3d at 593. Similarly, they do not cogently argue or provide evidence that the alleged "disciplinary write-ups" were adverse employment actions. Plaintiffs also do not argue or present evidence that they were treated differently than similarly-situated officers with regard to these actions. Because Plaintiffs raise the claim that they suffered an adverse action in the form of "write-ups" and "denial of transfers" in only the most cursory manner without developing that argument or supporting it with adequate legal authority, the Court deems Plaintiffs to have waived any such claim. *See United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

### ii. Other claims subject to waiver

As noted, in the section of their memorandum in opposition arguing that they "clearly suffered adverse actions under the Title VII standard," Plaintiffs express what the Court has interpreted to be an allegation that the PSU, CDP and Krivda investigations constituted adverse actions, and make a cursory reference to "disciplinary write-ups" and "denial of transfers." Looking at their memorandum in opposition as a whole, the Court notes that although Plaintiffs mention additional miscellaneous actions at various other points of their memorandum, they do not present a cogent argument that these actions form the basis of an actionable race discrimination claim. Specifically, Plaintiffs do not develop a claim of race discrimination with respect to the following allegations: (1) Lt. Daum allegedly threatening to write them up for missing inspections; (2) Union representative James Davis attending their interviews with Krivda, despite their objections, and allegedly participating in the interviews; (3) Krivda allegedly tape-recording only her interviews with the African-American Plaintiffs, not Caucasian officers; (4) allegedly being disciplined for "backtiming;" (5) allegedly being placed under surveillance; (6) Paxton's prohibition against remote parking; (7) "failure to assign any vehicle or assigning substandard vehicles;" (8) "denial of training by Lt. Daum;" (9) the order from Ellis against "caucusing" at work; (10) the requirement for FPB inspectors to complete daily activity forms; and (11) "being written up for conduct that white firefighters are not." Pls.' Mem. Opp'n Page ID #4970, 4976–77, 4987–88.

Plaintiffs present no argument or authority that these alleged actions qualify as materially adverse for purposes of a Title VII race discrimination claim. Plaintiffs also

do not cogently argue or present evidence that they were treated differently than similarly-situated officers with respect to these actions. To the extent Plaintiffs initially sought to assert a claim of race discrimination based on these alleged events, they have waived such claims by failing to support or develop that argument. *See Sandridge*, 385 F.3d at 1035–36.[6]

## B. Hostile Work Environment

Plaintiffs allege that they were subject to a hostile work environment based on race and in retaliation for filing complaints of discrimination, in violation of Title VII and Ohio Revised Code § 4112.02. In their First Amended Complaint, Plaintiffs allege that Defendant subjected them to this hostile work environment both on the basis of their race and in retaliation for their filing charges of race discrimination. First Am. Compl. ¶¶ 53–56, ECF No. 6. Although Plaintiffs do not cogently distinguish between those two distinct claims in their memorandum in opposition, the Court will address each in turn.

### 1. Racially hostile work environment

In their Amended Complaint, Plaintiffs assert a claim of hostile work environment based on race, in violation of Title VII and Ohio Revised Code § 4112.02. First Am. Compl. ¶¶ 51–56, ECF No. 6. To establish a prima facie case of hostile work

---

[6]Additionally, in the section arguing that they "clearly suffered adverse actions," Plaintiffs cite *Jordan*, 464 F.3d at 595–96 for the proposition that "loss of acting time and overtime opportunities for firefighter constituted tangible action," and state, in a footnote, that Wesley Fullen, a plaintiff in related Case No. 2:08–cv–263, *Fullen v. City of Columbus*, "estimates that he alone lost between $12,000 to $18,000 in overtime for lost work opportunities to which he ought to have been entitled—but for the City's misdeeds." Pls.' Mem. Opp'n Page ID #4981. Plaintiffs do not present any additional detail, argument, or support for a purported race discrimination claim based on allegedly being denied "overtime for lost work opportunities." Therefore, to the extent Plaintiffs intended or attempted to assert such a claim, the Court deems it waived. *See Sandridge*, 385 F.3d at 1035–36.

environment based on race, Plaintiffs must establish that: (1) they are members of a protected class; (2) they were subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with their work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotations and citations omitted). The Court must examine the totality of the circumstances to determine whether the work environment was hostile. *Harris*, 510 U.S. at 23. In doing so, the Court considers factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *see also Barrett,* 556 F.3d at 515.

In establishing an adverse effect on work performance, a plaintiff need not prove that his tangible productivity has declined due to the harassment, but need only show that the harassment made it more difficult to do his job. *See Davis v. Monsanto Chem. Co.,* 858 F.2d 345, 349 (6th Cir. 1988). Both an objective and a subjective test must be applied: the conduct must have been severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as having been abusive. *Harris*, 510 U.S. at

21–22.  Title VII is not a "general civility code," and thus "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted).  Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment."  *Faragher*, 524 U.S. at 788; *see also Barrett*, 556 F.3d at 515 (quoting *Faragher*).

Claims for hostile work environment brought under Ohio Revised Code § 4112.02 are evaluated using the same evidentiary standards and analysis used for federal claims under Title VII.  *See Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1157 (S.D. Ohio 2010).

As an initial matter, the Court notes that the section of Plaintiffs' memorandum in opposition headed: "Samples of evidence in the record of the hostile environment endured by all of the Plaintiffs in the interrelated cases" (Section V(F)(3)) is nearly exactly the same as that same section in the lead case.  That is, in that section, Plaintiffs set forth only six specific such samples, all of which are articles from the *Dispatch*, written by *Dispatch* reporters.  Pls.' Mem. Opp'n Page ID #4997–99.  In that section, as in the lead case, Plaintiffs cite no other specific evidence from the record which they contend demonstrates a hostile work environment.[7]  Plaintiffs also do not

_____

[7]As in the lead case, Plaintiffs also assert in that section that the record in this case and the three related cases contains "hundreds of acts that comprise actionable claims of hostile environment."  Pls.' Mem. Opp'n Page ID #4999.  The Court is mindful that pursuant to Federal Rule of Civil Procedure 56, it may consider other materials in the record that the parties have not cited, but "need consider only the cited materials."  Fed. R. Civ. P. 56(c)(3).  The Court has no duty to comb the voluminous record in this case for the allegedly numerous acts of hostile work environment Plaintiffs only vaguely reference, but considers only the materials cited by the parties.  *See In re Morris*, 260 F.3d at 665; *Braithwaite v. Sec'y of Dep't. of Homeland Sec.*, 699 F. Supp. 2d 949, 962 (N.D. Ohio 2010) ("A district court need only consider the evidence presented to it when considering a motion for summary judgment, regardless of whether other

present any additional evidence or authority to support a claim of racially hostile work environment based on the *Dispatch* articles beyond that offered by plaintiff Yolanda Arnold in the lead case. Therefore, for the reasons discussed in the Opinion and Order in the lead case, Plaintiffs here likewise fail to establish a claim of racially hostile work environment based on the articles that appeared in the *Dispatch*.

Nonetheless, although Plaintiffs cite only those six *Dispatch* articles as specific evidence demonstrating a hostile work environment, the Court will consider whether Plaintiffs can establish a claim of racially hostile work environment based on the other allegations they raise. To reiterate, once more, in the "Statement of the Facts" section of their memorandum in opposition, Plaintiffs allege that they were "subjected to a variety of acts that have created and contributed to a hostile environment." Pls.' Mem. Opp'n Page ID #4976–77. Specifically, they allege they were subjected to the following: (1) "three separate investigations based upon unsubstantiated allegations of misconduct;" (2) "no one being disciplined for making the numerous false allegations against the black inspectors;" (3) discipline for "backtiming;" (4) being placed under surveillance; (5) Lt. Daum threatening to write them up for missing inspections; (6) "Paxton's prohibition of the privilege of remote parking;" (7) the "failure to assign any vehicle or assigning substandard vehicles;" (8) denial of training by Lt. Daum; (9) Ellis' prohibition against "caucusing" at work; (9) the requirement that they complete daily tracking forms; (10) "being written up for conduct that white firefighters are not;" (11) "denial of transfers;" (12) "suspending and terminating BC [Yolanda] Arnold and BC

---

potentially relevant evidence exists somewhere in the record.") (quoting *Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010)).

Fullen;" and (13) Brown's alleged statement that "he was harder on blacks than on whites to avoid the appearance of 'bias.'" *Id.*

Plaintiffs, however, provide no cogent argument or admissible evidence to establish that any of the allegedly harassing conduct about which they complain was "based on race."[8]  Moreover, even if Plaintiffs had established that element, they provide no evidence or cogent argument that the harassment was sufficiently severe or pervasive to alter the conditions of their employment.  *See Russell*, 537 F.3d at 608. Lastly, Plaintiffs provide no evidence or cogent argument that Defendant failed to take reasonable care to prevent and correct any harassing behavior.  *Id*.  Plaintiffs offer only generalized allegations, which alone are insufficient to establish a case of racially hostile work environment.  *See Sandridge*, 385 F.3d at 1035–36.

### 2. Retaliatory hostile work environment/retaliatory harassment

Although their First Amended Complaint asserts a claim of hostile work environment based on race and based on retaliation for protected activity, First Am. Compl. ¶¶ 51–56, ECF No. 6, Plaintiffs do not distinguish between these two distinct types of harassment in their memorandum in opposition.

Title VII prohibits an employer from discriminating against any employee . . . "because [the employee] has opposed any practice made an unlawful employment

---

[8]Plaintiffs offer the same statements by Ellis, Reall, Campbell, and Hedges as plaintiff Yolanda Arnold offered in the lead case to attempt to show the racial bias of those individuals.  *See* Pls.' Mem. Opp'n Page ID #4985–89.  Those statements, however, do not establish that any of the allegedly harassing conduct about which Plaintiffs complain was "based on race."  Additionally, to the extent Plaintiffs seek to base a claim of racially hostile work environment on statements allegedly made to Krivda during her investigation, they present no authority suggesting that Defendant could even be held responsible for statements made to a third party, in the context of an investigation conducted by that third party.

practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim under § 4112.02 is evaluated using the same evidentiary standards and analysis as a Title VII claim. *See Satterfield*, 736 F. Supp. 2d at 1165–66.

The Sixth Circuit recognizes that retaliation may take the form of materially adverse employment actions or a hostile work environment. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000); *Allen*, 697 F. Supp. 2d at 902–03. To establish a prima facie case of retaliatory hostile work environment, a plaintiff must demonstrate: (1) he engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant subjected plaintiff to severe and pervasive retaliatory harassment by a supervisor; and (4) a causal connection exists between the protected activity and the harassment. *Morris*, 201 F.3d at 792; *Russell*, 537 F.3d at 609.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *Morris*, 201 F.3d at 792–93. If the defendant carries this burden, the plaintiff, who bears the burden of persuasion throughout the entire process, must then demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id*. at 793.

In their memorandum in opposition, however, Plaintiffs offer *no* evidence, and do not even plainly argue, that the alleged harassment was causally connected to the filing of their EEOC charges. Indeed, such a claim would be rather difficult to assert, given that the primary events of which Plaintiffs complain—namely, the PSU, CDP and Krivda

investigation and the corresponding negative media coverage—occurred before

Plaintiffs filed their EEOC charges in January 2007. Because Plaintiffs do not develop

or present any argument or legal authority in support of their claim of retaliatory hostile

work environment, they have therefore waived that claim. *See Sandridge*, 385 F.3d at

1035–36.

## C. Retaliation for engaging in speech protected by the First Amendment, in violation of 42 U.S.C. § 1983

Plaintiffs bring a claim under 42 U.S.C. § 1983 alleging that Defendant retaliated

against them for engaging in speech protected by the First Amendment to the U.S.

Constitution.

Defendant's argument for summary judgment on that claim is identical in

substance to its argument in the lead case. First, Defendant argues that any claims

arising from events that occurred prior to March 2006 are barred by the two-year statute

of limitations. Second, Defendant argues that Plaintiffs fail to allege or prove essential

elements of their First Amendment retaliation claim. Finally, Defendant argues that

pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658

(1978), the City of Columbus, as the sole Defendant, cannot properly be held liable

under § 1983 for the conduct of its employees or agents.

Plaintiffs' argument in response is also nearly identical in substance to plaintiff

Yolanda Arnold's in the lead case. Plaintiffs argue that their claim is not barred by the

statute of limitations, that they establish the required elements, and that Defendant can

properly be held liable.

The parties' arguments closely mirror those of the lead case, and no new

arguments or evidence regarding Plaintiffs' § 1983 claim that the Court has not already addressed in the lead case are advanced.  Thus, for all of the reasons enumerated in Section III(D) of the Opinion and Order in the lead case, Plaintiffs here also fail to establish a viable claim against the City of Columbus for retaliation in violation of their First Amendment rights, pursuant to 42 U.S.C. § 1983.

## D.  Violation of Plaintiffs' Fourteenth Amendment right to equal protection, in violation of 42 U.S.C. § 1983

Plaintiffs' First Amended Complaint also purports to assert a claim under 42 U.S.C. § 1983 for the violation of their right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution.  First Am. Compl. ¶¶ 61–62, ECF No. 6.  Plaintiffs present no argument in support of that claim in their response to Defendant's motion for summary judgment; they have therefore waived any purported claim based on alleged violations of the Fourteen Amendment.  *See Sandridge*, 385 F.3d at 1035–36.  Moreover, even if Plaintiffs had not waived that claim, it would also fail for the same reasons as stated in Section III(C), above, and Section III(D) of the Opinion and Order in the lead case.

## F.  Remaining state law claim

Having determined that Plaintiffs' federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim for Invasion of Privacy—False Light (Count V).  28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  The Court will therefore dismiss that state law claim without prejudice.

## V. DISPOSITION

For the aforementioned reasons, the Court **GRANTS** the City of Columbus'

summary judgment motion. ECF No. 35. The Court **DISMISSES** the following claims

**WITH PREJUDICE**: Race Discrimination in violation of Title VII and Ohio Rev. Code §§

4112.02 & 4112.99 (Counts I & II); Hostile Work Environment in violation of Title VII

and Ohio Rev. Code §§ 4112.02 & 4112.99 (Counts III & IV); First Amendment

Retaliation and violations of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983

(Counts VI & VII). The Court dismisses Plaintiffs' state law claim for Invasion of

Privacy/False Light (Count V) **WITHOUT PREJUDICE**.

The Clerk shall remove ECF No. 35 from the Civil Justice Reform Act motions

report.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**